IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| WILLIAM WADE, | : | CIVIL ACTION NO. |
| | : | |
| Plaintiff, | : | |
| | : | **JURY TRIAL DEMANDED** |
| v. | : | |
| | : | |
| O.C.E.A.N. INC., | : | |
| | : | |
| Defendant, | : | |

**PRELIMINARY STATEMENT**

1.  Plaintiff William Wade ("Plaintiff" or "Wade") by and through his attorneys, Mizrahi Kroub LLP, files this Civil Action Complaint against Defendant O.C.E.A.N. Inc. ("Ocean" or "Defendant"). Plaintiff asserts race discrimination and retaliation claims against Defendant under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII"); the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("Section 1981"); and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq*. ("NJLAD").

2.  Throughout the history of the United States, racial discrimination has persisted in a multitude of areas in society. The workplace is no exception. Unfortunately, at Ocean, employees that belong to certain racial backgrounds continue to face discrimination. Mr. Wade is one such employee who experienced race discrimination while working for Defendant. Consequently, Mr. Wade was terminated as a result of this discrimination.

**PARTIES**

3.  Plaintiff William Wade ("Plaintiff") is an African American male and a citizen of New Jersey.

4.  Plaintiff currently resides in Brick, New Jersey.

1

5. Defendant O.C.E.A.N. Inc. is an employer formed under the laws of the State of New Jersey with its principal place of business at 40 Washington St, Toms River, NJ 08753.

## JURISDICTION AND VENUE

6. Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343(a)(3).

7. The Court has supplemental jurisdiction over the claims of Plaintiff brought under state law pursuant to 28 U.S.C. § 1367.

8. Venue is proper in this district based upon the fact that a substantial part of the events and omissions giving rise to the claim occurred within the District of New Jersey. 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

9. Ocean is an outreach and public relations entity and requires the collection of client information as part of its Weatherization Assistance Program and related operations.

10. Mr. Wade was employed by Ocean from 2012 to 2013, working as a field technician in the weatherization department.

11. During this period, he completed his OSHA 10-Hour General Industry Outreach Training Course.

12. Mr. Wade was rehired at Ocean on or about May 29, 2018 by Michael Hussey, the Weatherization Department Manager.

13. Mr. Wade holds multiple professional certifications, including Building Analyst Professional (BPI #5063554), National Center for Construction Education and Research (NCCER #1834657), OSHA 10-Hour Construction Safety and Health (OSHA #14-

006487076), is certified by the American Chemistry Council in Low Pressure SPF Safety and High Pressure SPF Safety (ID #0000129478), and is a Mold, Moisture & Remediation Expert.

14. Mr. Wade possesses a Commercial Driver's License (Class A) and a Heavy Equipment Operator Certification.

15. Mr. Wade also earned a Paralegal certification from Blackstone Career Institute in Allentown, PA, in 1991.

16. During his second stint of employment with Ocean, Mr. Wade was the sole Black employee in a workplace that was overwhelmingly White, alongside only two Hispanic employees.

17. Mr. Wade was paid less than similarly situated White employees.

18. Mr. Wade trained at least four colleagues: Neilson Worth, Fredy Serrano, Darren Balton and Steven Cortes.

19. Colleague Darren Balton was hired in or around the beginning of 2022.

20. Colleague Balton is a white male.

21. Colleague Balton had no prior work experience and no credentials.

22. Colleague Balton was hired as a technician.

23. Colleague Balton was getting paid the same amount as Mr. Wade.

24. This is most troubling because Mr. Wade is a highly credentialed individual with many years of relevant work experience.

25. Colleague Balton received a promotion in 2023, and was promoted to Building Analyst Professional (BPI).

26. Mr. Wade asked his Supervisor Harold Smith and Human Resources Department ("HR") why the White employees were receiving higher compensation and

promotions, yet his concerns were never addressed.

27. Mr. Wade was also treated differently.

28. Mr. Wade received disciplinary actions for conduct which is permitted in the employee handbook.

29. In one instance, Mr. Wade obtained and handled client documentation in accordance with Ocean's policies, as substantiated by paperwork issued by HR, Ocean's Weatherization Assistance Program, and Ms. Connie Louise Fahim, Grant Writer/Public Relations.

30. In or around January 2023, Mr. Wade and Colleague Balton responded to two emergency appointments on the same street: one involving a hot water issue, and the other a furnace problem at properties directly across from each other.

31. During this assignment, a client of Ocean's, approached Mr. Wade with documentation she needed to submit to Ocean.

32. The client expressed concerns about her homelessness and told Mr. Wade that she was temporarily staying with a friend.

33. Due to the lack of a vehicle, she was unable to travel to any of Ocean's offices at 40 Washington Street, Toms River, NJ 08753; 1256 Indian Head Rd, Toms River, NJ 08755; or 144 John Street, Lakewood, NJ 08701.

34. Mr. Wade effectively addressed the client's needs by collecting her documentation and delivering it in person to Tammy, a colleague at the 1256 Indian Head Rd office, ensuring the necessary paperwork was properly submitted.

35. This action aligns with Ocean's protocols.

36. Despite this compliance, Supervisor Smith later alleged that Mr. Wade erred in

his handling of the client's encounter—a baseless claim contradicted by Mr. Wade's adherence to Ocean's employee handbook.

37. Non-Black colleagues engaged in similar conduct without facing any backlash.

38. Specifically, Supervisor Smith has demonstrated a pattern of hostility toward Mr. Wade while granting leniency to Colleague Balton for similar or more significant infractions.

39. Moreover, Mr. Wade was repeatedly passed over for promotions despite his qualifications and relevant experience, which were superior to those promoted, particularly noting the case of Colleague Worth.

40. Colleague Worth, a white employee, commenced employment with the company in or around 2018, possessing neither prior work experience nor relevant credentials.

41. Colleague Worth was first hired as a technician.

42. Colleague Worth received promotions in both 2018 and 2021.

43. Colleague Worth was promoted from technician to auditor.

44. Meanwhile, Mr. Wade, who possessed greater credentials and experience, applied for the promotion but was overlooked.

45. Mr. Wade even pursued other opportunities for advancement, such as crew chief and energy auditor positions, but his efforts were also ignored.

46. On March 1, 2023 Mr. Wade filed a whistleblower complaint with OSHA, OMB # 1218-0236.

47. In the whistleblower complaint, Mr. Wade complained that Ocean took adverse actions against him.

48. Specifically, Mr. Wade asserted a denial of benefits, failure to promote,

threaten to take adverse action, and discrimination in the workplace.

49. Furthermore, Mr. Wade stated in the Complaint that Ocean was not paying for his continued education despite receiving grant money for employees to continue their education.

50. Under OSHA regulations and Ocean's policies, employees are prohibited from using a client's electricity while working at their home and are instead required to use company-provided generators.

51. Despite this requirement, Ocean routinely violated these policies by relying on clients' electricity during such assignments.

52. In January 2023, Ocean informed Mr. Wade that, to maintain his employment, he was required to renew his BPI certificate and successfully complete an Energy Auditing Exam.

53. This certification would authorize Mr. Wade to conduct thorough, unsupervised home inspections and sign off on those inspections.

54. These inspections include evaluations of furnaces, hot water heaters, stoves, and other appliances or systems powered by propane or natural gas.

55. Mr. Wade scheduled the Energy Auditing Exam for April 28, 2023.

56. In a retaliatory action, on April 28, 2023, while Mr. Wade was actively engaged in the Energy Auditing Exam at the testing site, Supervisor Smith deliberately disrupted the process by entering the examination room unannounced.

57. Supervisor Smith confronted Mr. Wade, stating, 'It's time to go; other people have things to do. You've had enough time,' despite Mr. Wade's explanation that he still had sufficient time remaining.

58. Supervisor Smith's aggressive intrusion escalated the situation, prompting the state auditor to intervene and remove Mr. Wade from the premises for his own safety, a decision beyond Mr. Wade's control.

59. The state auditor subsequently directed Mr. Wade to visit him in Long Branch, NJ to address the matter further.

60. Notwithstanding this disruption directly caused by Supervisor Smith's interference, Ocean terminated Mr. Wade for failing to complete the Energy Auditing Exam—a failure solely attributable to Supervisor Smith's actions rather than any negligence or inability on Mr. Wade's part.

61. Mr. Wade was not given a termination letter.

62. Following Mr. Wade's termination, Ocean hired two new employees.

## AS A FIRST CAUSE OF ACTION
## DISCRIMINATION UNDER SECTION 1981

63. Plaintiff hereby repeats, reiterates, and re-alleges the preceding as though set forth fully herein.

64. By committing the foregoing acts of race discrimination, and retaliation against Plaintiff based on his race and/or his complaints of race discriminatory conduct, Defendant has violated Section 1981.

65. Defendant's violations were both intentional and willful, thus warranting the imposition of punitive damages.

66. As a direct and proximate result of Defendant's violation of Section 1981, Plaintiff has suffered the damages and losses set forth herein.

67. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory acts unless and until this Court

grants the relief requested herein.

## AS A SECOND CAUSE OF ACTION
### RETALIATION UNDER SECTION 1981

68. Plaintiff hereby repeats, reiterates, and re-alleges the preceding as though set forth fully herein.

69. By committing the foregoing acts of retaliation against Plaintiff based on his race and/or his complaints of race discriminatory conduct, Defendant has violated Section 1981.

70. Defendant's violations were both intentional and willful, thus warranting the imposition of punitive damages.

71. As a direct and proximate result of Defendant's violation of Section 1981, Plaintiff has suffered the damages and losses set forth herein.

72. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory acts unless and until this Court grants the relief requested herein.

## AS A THIRD CAUSE OF ACTION
### DISCRIMINATION UNDER NJLAD

73. Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

74. By committing the foregoing acts of race discrimination against Plaintiff based on his race and/or his complaints of race discriminatory conduct, Defendant has violated the NJLAD.

75. Members of Defendant's upper management had actual participation in, and/or willful indifference to, Defendant's conduct described herein, and their conduct warrants the

imposition of punitive damages against Defendant.

76. As a direct and proximate result of Defendant's violation of NJLAD, Plaintiff has suffered the damages and losses set forth herein.

77. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory acts unless and until this Court grants the relief requested herein.

## AS A FOURTH CAUSE OF ACTION
## RETALIATION UNDER NJLAD

78. Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

79. By committing the foregoing acts of retaliation against Plaintiff based on his race and/or his complaints of race discriminatory conduct, Defendant has violated the NJLAD.

80. Members of Defendant's upper management had actual participation in, and/or willful indifference to, Defendant's conduct described herein, and their conduct warrants the imposition of punitive damages against Defendant.

81. As a direct and proximate result of Defendant's violation of NJLAD, Plaintiff has suffered the damages and losses set forth herein.

82. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's retaliatory acts unless and until this Court grants the relief requested herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff William Wade prays that the Court enter judgment in his favor and against Defendant, containing the following relief:

  A. A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the State of New Jersey;

  B. An injunction and order permanently restraining Defendant and their partners, officers, owners, officials, agents, successors, employees and/or representatives, and any and all persons acting in concert with and/or on behalf of them, from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

  C. An award of damages against Defendant, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiff for all monetary and/or economic damages;

  D. An award of damages against Defendant, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for mental anguish, psychological harm, and emotional distress;

  E. An award of punitive damages and any applicable penalties in an amount to be determined at trial;

  F. Pre-judgment interest on all amounts due;

  G. An award of fees and costs that Plaintiff has incurred in this action, as well Plaintiff's reasonable attorneys' fees and costs to the fullest extent permitted by law; and

  H. Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Respectfully submitted,
**MIZRAHI KROUB LLP**

By: _____
       Edward Y. Kroub

Edward Y. Kroub, Esq.
Mizrahi Kroub LLP
225 Broadway, 39th Floor
New York, NY 10007
Telephone: (212) 595-6200
ekroub@mizrahikroub.com
*Attorney for Plaintiff*